### DAVIS, Director General of Railroads, v. CONTINENTAL SUGAR CO.

(Circuit Court of Appeals, Sixth Circuit. April 6, 1925.)

No. 4311.

Carriers ⬤191—Right to storage on outbound shipments.

Under the uniform interstate tariff schedule, entitling a railroad company to storage on outbound freight actually delivered for transportation, and held by it to complete a shipment, or for forwarding directions, storage *held* not collectible on beets piled on right of way before shipment.

In Error to the District Court of the United States for the Western Division of the Northern District of Ohio; Paul Jones, Judge.

Action at law by James C. Davis, Director General of Railroads and Agent operating the Toledo & Ohio Central Railroad Company, against the Continental Sugar Company. Judgment for defendant, and plaintiff brings error. Affirmed.

This proceeding in error is brought to reverse the judgment of the District Court in an action brought by the Director General of Railroads against the Continental Sugar Company, for storage charges and war tax for beets piled on the right of way of the Toledo & Ohio Central Railroad Company at Woodside and Hatton, Ohio. The plaintiff's claim is based on a uniform interstate tariff schedule filed with the Interstate Commerce Commission and promulgated by the carrier. The defendant denied that any of the storage charges, computed in conformity with this tariff schedule or otherwise, accrued in respect of any property at that time owned, possessed, or controlled by the defendant, and particularly that it is, or at any time was, liable to plaintiff in respect to any of the so-called storage charges or war taxes set forth in plaintiff's petition.

It appears from the undisputed evidence that Woodside at that time was what was called by the witnesses a blind siding; that no agent was located there, but all business was transacted by and with the station agent at Pemberville, four miles to the north. The defendant, during the fall of 1918 and between October 18th and December 9th, purchased a large quantity of beets from the farmers in that locality. These beets were unloaded from the wagons or trucks in which they were delivered to the defendant, on rough, open ground on the west side of the track on plaintiff's right of way. Later the defendant loaded these beets into wagons or carts, and hauled them across the track, and loaded them into cars on this blind siding. The loaded cars were attached to local freight trains; a bill of lading prepared by defendant was taken by the conductor to Pemberville and there executed by plaintiff's agent. Plaintiff claims that the storage on these beets, during the time they were piled on the railway's right of way at Woodside, amounts to $4,761.43, with war tax and interest.

At Hatton, the station is in charge of an agent and the plaintiff claims $91.97, together with war tax and interest, for the storage of beets which were piled partly on plaintiff's right of way to the south of the station and partly on the adjoining land of William A. Purdy. All of these beets were shipped from Woodside and Hatton, Ohio, to Findlay, Ohio.

Shortly after defendant had started to pile beets at Woodside, Mr. Mowry, representing the defendant, had a talk with the plaintiff's agent at Pemberville in reference thereto. In this conversation the plaintiff's agent suggested that the defendant secure a lease. The defendant's representative then requested the plaintiff to secure him a lease, dating it back to the time when the first beets were piled on the right of way. Some time later this lease was executed and delivered to the defendant, but it was not dated back to cover the period for which storage was charged. The lease itself was not introduced in evidence.

The uniform interstate tariff schedule, upon which the plaintiff relies for recovery, provides, among other things, that freight received for delivery, or held to complete a shipment, or for forwarding directions, if stored in or on railway premises, is subject to the storage rules and regulations named therein. Under these rules, 48 hours' free time is allowed to complete a shipment and furnish forwarding directions for outbound freight. Outbound freight held to complete a shipment, or for forwarding directions, is subject to storage charges at the rate of one-half cent per 100 pounds per day in excess of free time, or, at the discretion of the railway company, may be sent to public warehouses.

The cause was tried to a jury, resulting in a verdict for the defendant. Judgment was entered upon this verdict.

Frederick W. Gaines, of Toledo, Ohio (Doyle & Lewis, of Toledo, Ohio, on the brief), for plaintiff in error.

Gustavus Ohlinger, of Toledo, Ohio (Donald F. Melhorn, of Toledo, Ohio, on the brief), for defendant in error.

Before DONAHUE and MOORMAN, Circuit Judges, and WESTENHAVER, District Judge.

PER CURIAM. Under the uniform interstate tariff schedule, introduced in evidence in this case, the plaintiff was not entitled to charge and collect storage on outbound freight until it had actually been delivered to him for transportation, and held by him to complete a shipment, or for forwarding directions, as provided by paragraph "b" of rule 4 of the tariff schedule. From the facts proven or admitted in this case, it clearly appears that these beets, which were later shipped in intrastate traffic, were not delivered or intended to be delivered to the carrier as freight for transportation when they were piled upon the railroad's right of way.

The carrier did not then accept these beets as freight, or issue any bill of lading or other receipt therefor. He did not exercise any care, control, or authority thereover, and could not have been held liable for their loss or damage. They were not piled upon the right of way at the point where they were later actually received by the carrier, but, on the contrary, were piled at such places that it was necessary to load them on a wagon and haul them to the place where they were received as freight by the carrier and loaded upon the carrier's cars, at which time a bill of lading was issued. After they were received as freight by the plaintiff, they were not held by him to complete a shipment or for forwarding directions, but the cars in which they were loaded were, at the convenience of the carrier, attached to the local freight and moved in intrastate traffic to Findlay, Ohio. Moore Stave Co. v. Central Georgia Railroad Co., 51 Interst. Com. Com'n R., 170, 171.

Judgment affirmed.